UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISA VANDERHOFF,

   Plaintiff,          Case No. 1:16-CV-156

v.

                   HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Alisa VanderHoff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-two years of age on the date of the ALJ's decision. (PageID.44, 70.) She completed the tenth grade, and was previously employed as a laundry counter clerk. (PageID.72, 97.) Plaintiff filed for benefits on July 2, 2012, alleging that she had been disabled since April 1, 2012, due to problems associated with her liver and pancreas, kidney stones, short term memory problems, and frequent urinary tract infections. (PageID.106, 122, 186–197.) Plaintiff's applications were denied on January 15, 2013, after which time she sought a hearing before an ALJ.

(PageID.141–148, 152–153.) On June 25, 2014, Plaintiff appeared with her counsel for an administrative hearing before ALJ Nicholas Ohanesian at which both Plaintiff and a vocational expert (VE) testified. (PageID.64–104.) On August 28, 2014, the ALJ issued a written decision finding Plaintiff was not disabled. (PageID.44–63.) On December 16, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Ohanesian determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.49.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) alcohol induced cirrhosis with associated pancreatitis; (2) chronic thrombocytopenia and diarrhea; (3) gastroesophageal reflux disease (GERD); (4) pyelonephritis with recurrent urinary tract infections; (5) hypertension; (6) degenerative joint disease of the left knee; (7) migraine headaches; (8) obesity; (9) anxiety disorder; (10) dysthymic disorder; (11) borderline personality disorder; and (12) alcohol abuse in recent remission. (PageID.59.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.50–51.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds; she cannot balance, [stoop], kneel, crouch, crawl, or climb stairs/ramps more than occasionally; she cannot work with more than frequent exposure to unprotected heights or hazardous machinery; she cannot perform more than simple, routine, repetitive tasks; and she cannot maintain contact with the general public or more than occasional contact with co-workers and supervisors.

(PageID.52.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work.  (PageID.57.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: cleaner / housekeeping (8,000 Michigan jobs), assembler (10,000 Michigan jobs), and inspector / packager (9,000 Michigan jobs).  (PageID.99–100).  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.58.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from April 1, 2012, through August 28, 2014, the date of decision.  (PageID.58.)

## DISCUSSION

### 1.     The ALJ Properly Evaluated Plaintiff's Mental Impairments.

As noted above, at step two of the sequential evaluation the ALJ found that Plaintiff had several severe mental impairments and later, at step four, included several mental limitations in the RFC.  (PageID.52.)  For a variety of reasons, however, Plaintiff claims the ALJ erred in evaluating these impairments.

#### A.     *The ALJ Was Not Required to Order a Consultative Examination.*

On January 5, 2013, Plaintiff underwent a consultative examination with Ms. Allison Bush, an agency consultant.  After conducting several tests, Ms. Bush assigned Plaintiff a fair to guarded prognosis, noting that Plaintiff was able to understand, retain and follow through on simple instructions, but that she doubted Plaintiff could do so with complicated instructions.  She also recommended that Plaintiff undergo a neurological examination to establish a baseline of her

cognitive functioning.  (PageID.484.)  Plaintiff first claims the ALJ should have ordered such an examination.  (PageID.865.)

It was Plaintiff's burden to present evidence establishing her disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The Social Security regulations grant the ALJ the authority to order a consultative examination if a claimant's medical sources cannot give sufficient information about a claimant's impairments to enable the ALJ to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917.  However, "the regulations do not require an ALJ to refer a claimant to a consultative specialist." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Rather, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010).  The ALJ did not abuse his discretion in declining to order a consultative examination.

B.  The ALJ Did Not Violate SSR 96–8p When He Limited Plaintiff to Only Simple, Routine, Repetitive Tasks.

Plaintiff next argues that the ALJ failed to complete a function-by-function analysis of Plaintiff's RFC as required by SSR 96–8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).[2]  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. §§ 404.1545, 416.945.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).

regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530. SSR 96–8p states that "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96–8p, 1996 WL 374184 at *5. Each exertional function (sitting, standing, walking, lifting, carrying, pushing and pulling) must be considered separately. *Id.* Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength such as: postural (e.g., stooping and climbing); manipulative (e.g., reaching and handling); visual; communicative (hearing and speaking); mental (e.g., understanding and remembering instructions and responding appropriately to supervision); and the ability to tolerate environmental factors (e.g., tolerance of temperature extremes). *Id.* at *5–*6.

"Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at 547–548 (6th Cir. 2002) (citations and quotation marks omitted). Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado* by reviewing Plaintiff's medical history and functional limitations with respect to her physical and mental impairments, resulting in his RFC determination that Plaintiff could perform simple, routine, and repetitive tasks due to her mental impairments. (PageID.52.) Accordingly, the ALJ did not err by failing to perform a function-by-function analysis of Plaintiff's RFC.

      C.      *Plaintiff Has Not Shown the ALJ Erred in Giving "Great Weight" to the Opinion of the Dr. William Schirado.*

On January 14, 2013, Dr. William Schirado reviewed Plaintiff's records and completed an assessment regarding Plaintiff's mental RFC. The assessment asked the doctor to rate the severity of Plaintiff's limitations in several areas. Plaintiff focuses on the doctor's opinion that Plaintiff would be moderately limited in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (PageID.118.) In explaining this limitation as part of the larger category of concentration and persistence limitations, Dr. Schirado wrote that Plaintiff "has not experienced substantial loss completing daily activities or the ability to sustain simple instructions independently." (PageID.118.) The ALJ stated he was giving great weight to the opinion. (PageID.56.) Plaintiff claims, however, that although the ALJ purported to adopt the opinion, he failed to specifically include the doctor's moderate limitation in completing a workday and workweek when finding Plaintiff could perform simple, routine, and repetitive tasks. (PageID.865.) Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010) for support. (PageID.865–866.) While Plaintiff apparently believes the facts of the instant case and *Ealy* are similar, the Court is not convinced.

      In *Ealy*, the ALJ purported to adopt a specific restriction that limited the claimant to "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical" but then only included in the hypothetical RFC to the expert a limitation for "simple, repetitive tasks and instructions in non-public work settings." *Ealy*, 594 F.3d at 516. The Sixth Circuit found that the ALJ had not "fully conveyed" the claimant's limitations. *Id.* Consequently, the case stands only for the long-held notion that if an ALJ relies on an expert's response to a

8

hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012); *Alonso v. Comm'r of Soc. Sec.*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012). Here, the specificity that was present in *Ealy* is lacking. Indeed, the vague conclusion that Plaintiff is "moderately" limited in the abovementioned area is not, on its face, inconsistent with the RFC's limitation to simple, routine, repetitive tasks. It is patent that the ALJ found Plaintiff suffered from severe mental impairments, assigned great weight to opinion of the agency reviewer, and included limitations in the RFC to account for Plaintiff's impairments. "[A]n ALJ is not required to adopt verbatim the opinion of a physician or psychologist." *Woods v. Astrue*, No. 4:11-CV-2306, 2012 WL 5415327, at *13 (N.D. Ohio Oct. 5, 2012) *report and recommendation adopted*, No. 4:11 CV 2306, 2012 WL 5457475 (N.D. Ohio Nov. 5, 2012). "The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). That is what the ALJ has done in this case, and the Plaintiff has not demonstrated how the limitations contained in the RFC are inconsistent with Dr. Schirado's opinion. Accordingly, this argument fails.

> **2. The ALJ's Determination that Plaintiff was Able to Perform a Limited Range of Light Work is Supported by Substantial Evidence.**

Plaintiff next claims that the ALJ's determination she can perform a limited range of light work is unsupported by substantial evidence. She claims, for example, that the "medical evidence taken as a whole suggests someone who would be incapable of light work." (PageID.867.) She proceeds to cite several medical records documenting various complaints and diagnoses

including fatigue, urinary tract infections, chronic pain, headaches, nausea, weakness, and memory loss. (PageID.867.) The bare fact that Plaintiff was diagnosed with various impairments, however, does not establish the extent of limitations, if any, caused by those conditions. *See McKenzie v. Comm'r of Soc Sec.*, No. 99–3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual") (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)). Plaintiff had the burden of showing specifically how these impairments limited her ability to a degree inconsistent with the ALJ's RFC determination. It is not the Court's role, here, to conduct a *de novo* review of the case. *See Garner*, 745 F.2d at 387. As all Plaintiff has done is to list various impairments and then claim she is disabled because of them, the Court finds Plaintiff has failed to satisfy her burden here.

Plaintiff also claims that it is "unexplained in the decision how the ALJ determined Plaintiff could only occasionally balance, stoop, kneel, crouch, or crawl, or climb; but Plaintiff would be able to stand for the majority of the workday." (PageID.867.) But it is clear that the ALJ adopted the opinion of Dr. Dinesh Tanna, M.D., an agency consultant who opined on January 1, 2013, that Plaintiff could stand or walk for a total of about six hours in an eight hour workday, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (PageID.115–116.) In giving the opinion "great weight," the ALJ explained that the opinion was consistent with the record, including mild diagnostic findings and Plaintiff's daily activities. (PageID.56.) The ALJ was free to consider the consultant's opinion and determine what weight, if any, it should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are

'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The Court finds no error here.

### 3. The ALJ Properly Assessed Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than that recognized by the ALJ. She testified, for example, that she could only sit or stand for twenty minutes at any one time. (PageID.89.) She felt that lifting a gallon of milk was "a bit heavy." (PageID.90.) She experienced anxiety attacks when she had to fill out paper work, or answer questions. (PageID.88.) The ALJ found that these statements were not credible. (PageID.53.) Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Contrary to Plaintiff's assertion, it is clear the ALJ properly considered Plaintiff's subjective allegations and applied the factors set forth in 20 CFR §§ 404.1529 and 416.929. (PageID.52) ("I considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p."). While the ALJ could have better specified his reasons for finding Plaintiff not to be credible, the ALJ listed several reasons throughout his decision–including her refusal to follow prescribed treatment and her daily activities. (PageID.55.) The ALJ also noted the mild findings in the January 2013 consultative examination. (PageID.56.) Moreover, Plaintiff seemingly concedes that her testimony was not credible. (PageID.868) ("Plaintiff acknowledges the lack of credibility").

Plaintiff's argument however, appears to be that it is reversible error for an ALJ to mention activities of daily living in the credibility context. (PageID.868.) In *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007), the Sixth Circuit noted that "somewhat minimal daily functions are not comparable to typical work activities." However, as the regulations and case law make clear, a claimant's daily activities may be used in evaluating the severity of the Plaintiff's complaints. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."). Here, the ALJ did not impermissibly translate Plaintiff's daily activities into an ability to perform substantial gainful activity, but rather noted that her activities were inconsistent with the severity of her complaints. On her function report, Plaintiff reported attending church, and was able to get along with family. While she stated she had no friends, she was able to visit with neighbors. She also reported being able to finish what she started,

such as doing chores, reading, or watching a movie. (PageID.240–241.) Similarly, she reported to the agency examiner that she kept in regular contact with her sister and daughter. (PageID.482.) She was able to cook, clean, and take care of her personal needs. (PageID.482.) The ALJ reasonably found these activities to be inconsistent with the severity of her complaints.

Accordingly, this claim of error is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:     October 25, 2016               /s/ Robert J. Jonker
                                                              ROBERT J. JONKER
                                                              CHIEF UNITED STATES DISTRICT JUDGE